Croft *v.* Malli, Appellant.

Argued March 29, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Hubert Teitelbaum,* with him *Goldstock, Schwartz, Teitelbaum & Schwartz,* for appellants.

*John A. Metz, Jr.,* with him *Metz & Metz,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, May 24, 1954:

This case was tried before a judge of the common pleas without a jury, and upon the refusal of a new trial by the court en banc, judgment was entered on the verdict for plaintiff. We must first note that the scope of the review is much limited. "An appellate court will never substitute its own findings of fact, where the hearing judge's findings are sufficiently supported by the evidence and approved by the court in banc. Such findings have the same weight as the verdict of a jury": *Andrikanics v. Andrekanics,* 371 Pa. 222, 224, 89 A. 2d 792. See also *Logan Lumber Company v. Knapp,* 155 Pa. Superior Ct. 580, 584, 39 A. 2d 275; *Horsfield, Exrx. v. Metropolitan Life In-*

8

*surance Company,* 124 Superior Ct. 458, 462, 189 A. 892. Therefore the only question in this case is whether there is competent evidence sufficient to support a finding by the court below in favor of the plaintiff and against both defendants.

About April 10, 1950, and prior thereto, the plaintiff was engaged under a written contract with both defendants to strip coal on the defendants' farm. In doing this work he used his large caterpillar bulldozer. On April 11, 1950, because of some dispute between the parties, the plaintiff had his men remove the bulldozer from the defendants' property, place it on the berm of the public highway, and drain it of water to prevent freezing. At that time the bulldozer was in good working condition. Plaintiff's men returned to get the bulldozer the next day and found it had been removed some 2,000 feet to the property of defendants, who refused to permit them to take possession of it. Plaintiff's men did not inspect the bulldozer on that occasion, but returned the next day and found the motor block had been frozen. The defendant-husband was asked why he did not drain the water from the motor block and he replied that he did not think it was going to freeze. The plaintiff sought to recover for damage to the bulldozer and loss of its use. The defendants eventually gave up possession of the property to the plaintiff, first demanding a complete release of all damages thereto, which the plaintiff refused to give.

The appellant-defendants raise the following questions: First as to the proof of damages. The plaintiff proved by one of his witnesses that the bulldozer was in good working condition when left on the berm, and that on April 12 the motor and the radiator were broken from freezing. Another witness testified that he worked for the plaintiff and removed the bulldozer

and placed it on the berm; that on April 12 he found the bulldozer on defendants' property with the side pushed out of the motor from freezing, and that the ice was still there and he could see it. He further stated that on the evening of April 11 it was cold and freezing during the night, and that the witness' own car was frozen on the morning of April 12. With reference to the damages that ensued, plaintiff testified that it cost him $250.00 to remove the bulldozer at the end of the two months period that the defendants held it, that it cost him approximately $500 to fix the main spring of the motor, and that the net loss to him as a result of being deprived of the use of the bulldozer for two months was the total of $1,600.

The Beckwith Machinery Company was the only distributor of caterpillar parts in the area where the damage occurred. Tyson, its credit manager and assistant to the treasurer, testified that he and a workman examined the bulldozer in May, 1950. He testified to the condition of the bulldozer, that the motor had been frozen and was broken on the right side of the main block; that the radiator had been burst from freezing; that he was familiar with the type of machinery and that the cause of the damage was the freezing of the water in the cooling system. He stated that he and the mechanic went over the machine simultaneously and reached a mutual decision, and a fair charge for the necessary repairs was $3,700; and that the work necessary to repair the same would be to install a new Diesel engine block, a new starting engine block, a new radiator and radiator tanks. Another witness, manager of the Beckwith Machinery Company in charge of repairs and maintenance, testified that he had not examined the machine, but that whenever a block is frozen on a bulldozer he could say that a minimum number of things would have to be replaced to

get the machine in working condition. He also stated that in the particular case there could be more things which he was eliminating. He stated there would have to be replacements of the big engine block of the Diesel engine, complete radiator, starting engine block, the water pump, castings and all necessary seals and gaskets, and a new top tank and new bottom tank. He estimated costs, apart from labor, at from $2,000 to $3,500. He specifically testified as to the cost of the core, the top tank, the bottóm tank, and the Diesel engine block, the water pump and starting block, and component parts. The correct addition of these various component parts amounts to $2,216.71. He further stated that the labor cost of doing the job would be from $1,000 to $1,200.

The various items of plaintiff's testimony showed damage in the minimum amount of $5,066.71. The court's award was $4,525, which was less than the figure of $5,066.71 stated by the court to be conservative.

This was sufficient proof of the plaintiff's actual loss. All that was required of him was to fix the same "with a reasonable degree of certainty through witnesses with knowledge of the facts": *Gethins v. Stein,* 144 Pa. Superior Ct. 436, 438, 19 A. 2d 490. The verdict was neither contrary to the evidence nor to the weight of the evidence, nor did the plaintiff fail to meet the burden of proof as to damages.

Seemingly the gravamen of the defendants' objections as to the proof of damages was that the manager in charge of repairs and maintenance of the Beckwith Machinery Company had not seen the machine. But this witness testified only as to the minimum repairs that would have to be made to the machine, and this evidence was given after the credit manager of the Beckwith Machinery Company, who had examined

the bulldozer, had testified to the principal parts of damage occurring thereon. It was sufficient for the court to base a finding thereon. In the light of the testimony that on April 12 a freeze occurred, and that it was found frozen thereafter, there is nothing to the contention of the defendants that the plaintiff did not prove the damages occurred as a result of the dispossession by the defendants. The defendants' proof of the weather report showing a minimum of 36° centigrade at the Allegheny County airport was for the finder of the facts, particularly in view of the plaintiff's positive testimony of freezing on the night of April 11, and the further fact that the Allegheny County airport was five miles from the location of defendants' property.

Lastly, the defendants raise the proposition that there was no proof of liability in the defendant, Kathryn Malli. But the plaintiff offered in evidence a paragraph of the plaintiff's complaint to which the defendants did not file an answer. This paragraph read: "The defendants, or either of them or their agents, servants, workmen or employees acting in the scope of their employment, in the furtherance thereof, and under the direction of the defendants or either of them, took said bulldozer from the highway and removed it onto defendants' property; and after having moved said bulldozer onto defendants' property, refused to allow the workmen of the plaintiff to drain the radiator. . ." The defendant having filed no answer, under Pa. R. C. P. 1045(b), "shall be deemed to admit all averments relating to the identity of the person by whom a material act was committed, the agency or employment of such person. . ." The averments of the plaintiff's complaint were "averments relating to the identity of the person by whom a material act was committed," and to "the agency or employment of such

person. . ." In addition thereto, the evidence is that both defendants signed the written contract under which plaintiff was doing the stripping on defendants' farm, and that the husband-defendant was the active representative of both in connection with operations under that contract. It is to be noted that the defendants did not testify. Their failure to do so was a circumstance that the hearing judge could consider in deciding the truth in the controversy: *Dommes v. Zuroski,* 350 Pa. 206, 209, 38 A. 2d 73; *Peters v. Shear,* 351 Pa. 521, 525, 41 A. 2d 556.

Under these circumstances the following decisions are apposite: *Yezbak v. Croce,* 370 Pa. 263, 267, 268, 88 A. 2d 80: "While the marital status in itself does not give rise to an agency relationship, it is competent evidence when considered with other circumstances as tending to establish that one spouse was agent for the other. . . In the Restatement of Agency, section 22, comment b, cited with approval in Sidle v. Kaufman, 345 Pa. 549, 29 A. 2d 77, it is stated: 'Neither husband nor wife by virtue of the relationship has power to act as agent for the other. The relationship is of such a nature, however, that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of husband and wife. *Thus, a husband habitually permitted by his wife to attend to some of her business matters may be found to have authority to transact all her business affairs.'* " In *Mifflin County Riding and Driving Association v. Western Mutual Fire Insurance Company of Urbana, Ohio,* 376 Pa. 157, 160, 161, 101 A. 2d 683, it was stated: " 'It is a well established principle that whatever evidence has a tendency to prove an agency is admissible even though it be not full and satisfactory, and it is the province of the jury to pass upon it. "Direct evidence is not in-

dispensible—indeed, frequently is not available—but instead circumstances may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject matter of the contract." ' "

Both under the pleadings and from the facts proved in this case there was a joint enterprise of both defendants in the stripping operation, and their relationship was sufficient to support the court's finding of the liability of the wife-defendant along with her husband.

Judgment affirmed.