415 A.2d 56

Thomas A. SCOTT, Appellee,

v.

Robert PURCELL and The Oaklander Associates, a Limited Partnership, Appellants.

Supreme Court of Pennsylvania.

Argued March 6, 1980.

Decided May 30, 1980.

David J. Humphreys, Mary Reitmeyer, Pittsburgh, for appellants.

John B. Nicklas, Jr., McCrady, Nicklas & McCrady, James McAnemy, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and KAUFFMAN, JJ.

112

KAUFFMAN, Justice.

This appeal is from the order of the Superior Court reversing the entry of an order of compulsory nonsuit.[1] In 1971, appellee, Thomas A. Scott ("Scott"), brought an action in equity against appellants, Robert Purcell ("Purcell") and Oaklander Associates ("Oaklander"), seeking a constructive trust on certain real estate on the ground that Purcell had breached an agreement to act as agent for Scott in its purchase by taking title in the name of Oaklander. After completion of Scott's testimony on the issue of liability, the trial court granted appellants' motions for compulsory nonsuit.[2] The trial court sitting *en banc* refused to take off the nonsuits, dismissed the complaint and entered a final decree in favor of appellants. On appeal the Superior Court reversed and remanded for a new trial. *Scott v. Purcell*, 264 Pa.Super. 354, 399 A.2d 1088 (1978). We affirm.

Under Pennsylvania law, the plaintiff must be given the benefit of all favorable testimony and every reasonable inference arising therefrom; all conflicts must be resolved in his favor. *Martino v. Great Atlantic & Pacific Tea Co.*, 419 Pa. 229, 231, 213 A.2d 608, 609 (1965); *Penn v. Isaly Dairy Co.*, 413 Pa. 548, 550, 198 A.2d 322, 323, (1964); *Schwartz v. Urban Redevelopment Authority of Pittsburgh*, 411 Pa. 530, 532–33, 536–37, 192 A.2d 371, 372, 374 (1963); *Schechter v. Schechter*, 366 Pa. 30, 32–33, 76 A.2d 753, 755 (1950). In *Schechter*, this Court stated the general rule that "unless there are no conflicting inferences to be drawn it is far better to hear the defense so that the appellate court may have the benefit of findings of fact and conclusions of law by the chancellor confirmed by the court *en banc*." 366 Pa. at 33, 76 A.2d at 755. When a compulsory nonsuit is entered, lack of evidence to sustain the action must be so

1. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 724(a).

2. Thus, Scott had no opportunity to present evidence on the issue of damages.

clear that it admits no room for fair and reasonable disagreement. *McAuliffe v. Constantine*, 228 Pa.Super. 52, 54, 323 A.2d 158, 159 (1974). When an issue of credibility is raised on motion for compulsory nonsuit, it is not within the province of the trial judge to determine the believability of the plaintiff's testimony. *See Perciavelle v. Smith*, 434 Pa. 86, 89–90, 252 A.2d 702, 703 (1969). Thus, a compulsory nonsuit may be entered only when the plaintiff cannot recover under any view of the evidence, with every doubt resolved against its entry and all inferences drawn most favorably to the plaintiff. *Schechter v. Schechter*, 366 Pa. at 32–33, 76 A.2d at 755.

Scott's testimony, viewed in its most favorable light, may be summarized as follows:

Scott leased land that he owned in the Oakland section of Pittsburgh to the Civic Center Motel under an arrangement which permitted him to sublease and operate a restaurant in the motel in return for an annual rent of one dollar. During the summer of 1970, Scott learned that his land was to be taken by eminent domain no later than October 1, 1971. In his search for a replacement property, Scott met with Purcell, a real estate developer in the Oakland section who previously had been identified as a man capable of arranging financing for major commercial ventures.

At a meeting in Scott's office in November, 1970, Purcell indicated that he could obtain financing necessary to build a new motel. In return, the parties agreed that he would receive a fifty percent interest in the project. It was further agreed that Scott would manage the motel and would operate his own restaurant there on a one dollar a year lease. The parties then visited the land here in dispute. Scott told Purcell that he had been interested in this property earlier, but that the price then sought by the owner, Mrs. Margaret Ferguson ("Ferguson"), had been too high. After returning to his office, Scott requested that Purcell act on his behalf in obtaining the property and Purcell agreed to do

so. Scott also requested Purcell to visit Ferguson at her home in Florida while he was vacationing there.[3]

In February, 1971, after meeting with Ferguson in Florida, Purcell called Scott and informed him that her price for the land was approximately $250,000.00. Scott instructed him to make a counteroffer of $10,000.00 down and $225,-000.00 at closing. Purcell thereafter informed Scott that his counteroffer had been accepted.

When Purcell returned from Florida, he met with Scott and it was agreed that Scott would give him a check for the $10,000.00 downpayment as soon as an agreement of sale was prepared. Purcell was instructed to discuss the preparation of an agreement with Ferguson's attorney and to have him prepare the agreement with the space for the buyer's name left blank. Purcell agreed to deliver the sales agreement to Scott and pick up the $10,000.00 check for Ferguson. When Purcell failed to perform, Scott unsuccessfully attempted to telephone him.

On or about April 2, 1971, Purcell sent Scott a copy of a proposed "Joint Venture Agreement" between Scott and Lancer Development Corporation ("Lancer").[4] This proposed agreement required Lancer to produce a complete building and Scott to provide the "front monies," with each of the parties to have a fifty percent interest in the motel. Scott refused to sign the agreement because he knew nothing about Lancer and because the proposal did not accurately reflect the terms of his oral agreement with Purcell.

3. Two witnesses supported Scott's testimony concerning this November, 1970 meeting. Anthony Schulli, Scott's restaurant manager, testified that Scott called him into the meeting, and that he heard Scott say that "[h]e [Purcell] was supposed to secure the piece of property for Mr. Scott, and Mr. Purcell said he would." Alfred H. Cicerto, Scott's accountant, testified that he heard Scott ask Purcell "to be his agent to secure that property [the property owned by Mrs. Ferguson] and he told him where to find Mrs. Ferguson in Florida," and that Purcell responded affirmatively.

4. All of the stock of Lancer was owned by Purcell's wife, who also served as Assistant Secretary. Purcell was President and his attorney was Secretary.

Scott informed Purcell that the proposal was not acceptable and that he expected him to perform as originally agreed.

Scott and his attorney, John B. Nicklas, Jr. ("Nicklas"), met with Purcell at Nicklas office on April 23, 1971, and were shown an agreement of sale between Ferguson and Lancer that had been signed on Lancer's behalf by Purcell's wife on April 16, 1971. Scott was "upset," but Purcell reassured him by indicating "there was no reason to be concerned because it [the agreement between Scott and Purcell] could be carried on as we had originally agreed." The meeting continued with an explanation, for the benefit of Nicklas, of the financing arrangements, and Purcell admitted that he was having difficulty in obtaining mortgage financing for the proposed motel because the income from the restaurant was not included in the motel operation. At the conclusion of the meeting, Purcell agreed to continue his efforts to obtain financing on the basis of the restaurant rental being only one dollar per year.[5]

Shortly after the April 23rd meeting, Scott received from Purcell a letter dated April 26, 1971, in which Purcell stated that he was unable to obtain the necessary financing for the construction of the motel unless the one dollar per year rental for the restaurant was eliminated and the restaurant receipts were included with the motel receipts. Scott unsuccessfully tried to contact Purcell over the next few months.

On August 19, 1971, a deed from Ferguson to Oaklander was recorded. Oaklander had been formed in May or June of 1971 as a limited partnership consisting of the Oaklander Corporation as general partner and a Mr. and Mrs. Dunbar as limited partners. Purcell is the Vice-President of Oaklander Corporation and Purcell's wife and the Dunbars are its only shareholders.

In early September, 1971, Scott learned that Purcell had completed the agreement between Ferguson and Oaklander. On September 10, 1971, Scott commenced the present action by filing a Praecipe for Writ of Summons in Equity. A

5. At trial, Nicklas corroborated Scott's version of the April 23, 1971 meeting.

complaint was not filed until October, 1972. Therein, Scott asserted that Purcell had violated his agency agreement by wrongfully causing the property to be titled in the name of Oaklander and that Purcell and Oaklander should, therefore, be charged with a constructive trust.

Oaklander had mortgaged the land on May 30, 1972, as security for a development loan of $2,500,000.00. The various liened encumbrances on the land thereafter were foreclosed and the land was purchased by persons not parties to this action. In its opinion, the trial court noted that by the time trial commenced on October 25, 1976, all requests for relief other than for money damages had been mooted or abandoned, and that all parties agreed that the court should decide the issues without a jury.[6]

The trial court concluded that a nonsuit as to Purcell was proper because Scott had failed to produce evidence sufficiently definite to support a contract between Scott and Purcell regarding the acquisition or development of the land. With respect to Oaklander, the trial court held that a nonsuit was proper because, with no liability attaching to Purcell, there was no basis for a cause of action against Oaklander. We agree with the trial court's conclusion that the evidence was insufficient to establish a definite agreement between Purcell and Scott for development of the property, but, when viewed in the light most favorable to Scott, *Schechter v. Schechter*, 366 Pa. at 32–33, 76 A.2d at 755, the evidence could be sufficient to establish that Purcell agreed to act as Scott's agent in acquiring the property and that he breached his duties by giving Lancer, and through it Oaklander, the opportunity to purchase the property.[7]

**6.** By seeking only money damages, Scott has arguably conceded that he has an adequate remedy at law. Purcell and Oaklander, however, did not object to the trial court's exercise of jurisdiction and the case was therefore properly before the trial court sitting in equity. *See* Pa.R.Civ.P. 1509(c).

**7.** This conclusion may well be different when, after hearing all the evidence, the trial court has the opportunity to assess credibility and is not bound to view the evidence in the light most favorable to Scott.

 The basic elements of agency are "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Restatement (Second) of Agency § 1, Comment b (1958). *See Chalupiak v. Stahlman*, 368 Pa. 83, 88, 81 A.2d 577, 580 (1951). The testimony concerning the November, 1970 and April, 1971 meetings, when considered with the testimony concerning Purcell's activities in Florida in February, 1971, is sufficient to establish the appointment of Purcell as Scott's agent and his agreement to so act.[8] Moreover, the testimony regarding Purcell's intimate involvement in the eventual purchase of the property by Oaklander was sufficient to establish an abuse of the agency relationship by Purcell.[9] *See Shannon v. Baltz*, 398 Pa. 431, 433–35, 158 A.2d 558, 560 (1960); *McRoberts v. Phelps*, 391 Pa. 591, 138 A.2d 439 (1958). Accordingly, the trial court erred in entering a compulsory nonsuit in favor of Purcell.

 Although its liability rests on different grounds, we conclude that the trial court also erred in entering a compul-

8. The burden of establishing agency rests upon the party asserting it. *Girard Trust Bank v. Sweeny*, 426 Pa. 324, 231 A.2d 407 (1967). It is not necessary, however, to furnish direct evidence of the specific authority if it can be reasonably inferred from the circumstances of the case, *Yezbak v. Croce*, 370 Pa. 263, 267–68, 88 A.2d 80, 82 (1952), such as the relation of the parties to each other and their conduct with reference to the subject matter of the contract, *Croft v. Malli*, 378 Pa. 6, 12–13, 105 A.2d 372, 376 (1954), that there was at least an implied intention to create the relationship of principal and agent. *Brock v. Real Estate Land Title & Trust Co.*, 318 Pa. 49, 54, 55–56, 178 A. 146, 148–150 (1935).

9. There is insufficient evidence to support a claim that the agency relationship between Purcell and Scott was modified or terminated prior to Purcell's alleged abuse of that relationship. A modification of an agency relationship may occur when a principal acquiesces in conduct not included in the initial agreement. In the instant case, Scott did not "acquiesce" in the proposed agreement involving Lancer. Similarly, there is no indication that Scott wished to terminate the agency relationship; at the conclusion of the April 23, 1971 meeting, it was agreed that Purcell would continue his efforts to obtain financing for the project. For the same reason, it cannot be said that Purcell terminated the relationship by a renunciation; his actions at the April 23rd meeting compel a different conclusion.

118

sory nonsuit in favor of Oaklander. As noted above, an agreement of sale between Ferguson and Lancer was signed on Lancer's behalf by Purcell's wife on April 16, 1971. Mrs. Purcell owned one hundred percent of Lancer's stock and served as the corporation's Assistant Secretary. Lancer's other officers included Purcell (President) and Purcell's attorney (Secretary). Ferguson sold the property to Oaklander, a limited partnership consisting of the Oaklander Corporation as general and Mr. and Mrs. Dunbar as limited partners. Purcell is the Vice-President of Oaklander Corporation and Purcell's wife and the Dunbars are its only shareholders.

Viewed in the light most favorable to Scott, the foregoing evidence and all reasonable inferences therefrom could be sufficient to establish Purcell's intimate involvement with Lancer, the Oaklander Corporation and Oaklander, the eventual purchaser of the property, and that Oaklander was given the opportunity to purchase the property only because Purcell violated his duties to Scott as Scott's agent. Accordingly, we are unable to conclude that Scott cannot recover from Oaklander under any view of the evidence.

The order of the Superior Court is affirmed and the case is remanded for a new trial. Appellant to pay costs.

FLAHERTY, J., did not participate in the consideration or decision of this case.