484 A.2d 126

John LONG and Patricia Long, his wife, Appellants

v.

BROWNSTONE REAL ESTATE CO.; Lawrence Peters and Donald Lechleitner, Individually and t/d/b/a Brownstone Real Estate Co.; Carl Adams, Individually and as Representative for Brownstone Real Estate Co.; Jean Hoffman, Individually and as Representative for Brownstone Real Estate Co.; and Garry Long and Nancy Long, his wife, Appellees.

Superior Court of Pennsylvania.

Argued April 3, 1984.

Filed Nov. 2, 1984.

Joseph M. Farrell, Palmyra, for appellants.

Thomas A. Ehrgood, Lebanon, for Brownstone, appellees.

George E. Christianson, Lebanon, for Long, appellees.

Before WICKERSHAM, OLSZEWSKI, and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellants contend that the lower court erroneously granted appellees' motion for compulsory nonsuit at the close of appellants' case. We agree and, accordingly, reverse the order below.

On September 6, 1978, appellants, John and Patricia Long, entered into a sales agreement with appellees, Garry and Nancy Long, for the purchase of appellees' residence located at 1100 East Maple Street in Palmyra. Appellee Brownstone Real Estate Company (hereinafter "Brownstone") carried the listing of the property. Settlement on the property occurred on November 16, 1978, and appellants took possession the same day. On January 24, 1979, following a heavy rain, the basement of the house was flooded, causing damage to articles stored therein. Appellants thereafter discovered that the basement had been flooded on three occasions prior to the time they purchased the property. Appellants then filed suit against appellees Garry and Nancy Long, appellee Brownstone, and appellees Carl Adams and Jean Hoffman (agents for Brownstone), alleging negligence in failing to inform them of the flooding problem, breach of an implied duty of disclosure, and willful

misrepresentation of the condition of the property. On July 1, 1980, appellants filed a complaint in equity and a complaint in trespass and assumpsit against appellees. On September 10, 1981, appellants stipulated to terminating their equity action with prejudice. On September 14, 1981, jury trial commenced. On September 17, 1981, after appellants presented their case as to liability, the lower court granted appellees' motion for compulsory nonsuit. Appellants then filed a motion for removal of the compulsory nonsuit, which the lower court *en banc* denied by Order and Opinion filed November 3, 1982. This appeal followed.

"[A] nonsuit should be entered only in a clear case, and on appeal from the refusal to take off a compulsory nonsuit, the plaintiff must be given the benefit of all favorable testimony and every reasonable inference of fact arising therefrom and all conflicts thereon must be resolved in favor of plaintiff." *Martino v. Great Atlantic & Pacific Tea Co.*, 419 Pa. 229, 231, 213 A.2d 608, 609 (1965). *Accord, Norton v. City of Easton*, 249 Pa.Superior Ct. 520, 523, 378 A.2d 417, 418 (1977). "When a compulsory nonsuit is entered, lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement." *Scott v. Purcell*, 490 Pa. 109, 112–13, 415 A.2d 56, 58 (1980). "[A] compulsory nonsuit may be entered only when the plaintiff cannot recover under any view of the evidence, with every doubt resolved against its entry and all inferences drawn most favorably to the plaintiff." *Id.*

Here, appellants' evidence, viewed in the most favorable light, reveals the following facts: Appellees, Garry and Nancy Long, purchased the home in question in 1970 and were its first residents. In 1972, 1974, and 1976, while owned by appellees Long, the basement was flooded up to the ceiling, a height of approximately seven-to-eight feet. In March of 1978, appellees Long signed a real estate listing agreement with appellee Brownstone for the sale of the property. In August, 1978, appellants noticed the "For Sale" sign in front of the residence and contacted Brown-

stone. Prior to executing the sales agreement in September, 1978, appellants were shown the property, including the basement, by appellee Adams. While inspecting the property, appellants asked Adams if the property had any history of water damage because, if it had, they were not interested in purchasing the property. Adams replied in the negative. Richard Bowman, appellants' prospective mortgagee at the time, also inspected the property in the company of appellee Hoffman. In the basement, Bowman noticed a six-inch water line around the foundation on the cellar wall and asked Hoffman about it. Hoffman informed him that there had been a water problem but did not mention anything about the previous floodings. Bowman, in subsequently approving appellants' mortgage, believed that the water problem had since been alleviated. Appellants completed the purchase and moved into the residence in November of 1978. On January 24, 1979, heavy rain caused water to accumulate in the backyard of the residence. The below-ground basement door quickly collapsed under the pressure and water flooded into the basement, rising to the level of the ceiling rafters, a height of approximately eight feet, and damaging the basement's contents. Thereafter, appellants first learned about the three previous floodings.

The lower court granted the nonsuit primarily on the basis of Bowman's testimony regarding the water line in the basement, reasoning that appellants, upon reasonable inspection of the premises, should have noticed the water line and recognized that the house had a flooding problem. Therefore, the court concluded that appellees had no duty to disclose such a patent defect to appellants.

We disagree. First, there is no evidence that appellants ever noticed the water line and, even if they had or should have noticed it, we believe that a six-inch water line is not such an obvious defect as to constitute notice of eight-foot high floodings. A water line around the bottom wall of the basement is more indicative of water seepage or dampness from its foundation than of complete inundation of the basement from ground level. Moreover, appellants

had been falsely informed by the sales agent that the house had never experienced flooding and appellants had no reason to disbelieve him. Additionally, although there was a sump pump in the basement, appellants reasonably believed that such a pump was used in the event the automatic washer overflowed. Under these circumstances, we find that appellants presented sufficient evidence to support their claim that appellees had a duty to disclose the prior floodings and, therefore, hold that the nonsuit was unwarranted.

Accordingly, we reverse the lower court's order denying appellants' motion for removal of the compulsory nonsuit and remand for a new trial.*

Reversed and remanded. Jurisdiction is relinquished.

WICKERSHAM, J., files a dissenting opinion.

WICKERSHAM, Judge, dissenting:

I respectfully dissent.

I would affirm the decision of the Lebanon County Court *en banc* (per President Judge G. Thomas Gates and Judge John Walter) where the petition to remove a compulsory nonsuit was denied. As Judge Walter pointed out in his opinion dated November 2, 1982:

Plaintiffs' allegations are refuted by testimony that was put forward by the plaintiffs themselves. As a basis for a majority of their claims, plaintiffs assert that they knew nothing about the flooding problem with the Palmyra property. Plaintiffs claim they never observed any indication of flooding problems nor did anyone ever inform them of the water problem. However, plaintiffs' own witness, Mr. Bowman, testified that there was a water line along the wall in the basement which was clearly visible. (N.T. 252) The water mark was not concealed in any way and was easily recognizable for what it was—a water mark.

* Because of our disposition of this case, we need not address appellants' remaining contentions.

When an imperfection in a property is open and obvious it is considered a patent defect. And a patent defect imposes no duty on the owner to warn or declare. A flooding problem may not always be considered a patent defect depending on the surrounding circumstances. However, in the instant case there is no question that the flooding problem was open and obvious. By making a reasonable inspection of the house, including the basement, it was readily discernable that the property had a flooding problem at least once. For there along the basement wall, six inches above the floor was the water mark for all who would look, to see. A reasonable person seeking it would recognize the "signature" of water in the basement up to that level.

The presence of water marks in a basement as evidence of a defect in the home from some cause can be distinguished from a situation where there are mud channels made by termites present in the rafters in a basement. The latter may not be recognizable to a reasonably prudent person; the former are. See *Quashnock v. Frost,* [299] Pa.Super. [9], 445 A.2d 121 (1982). Thus, because the imperfection—the flooding problem—was so obvious it is a patent defect.

A seller's duty to disclose a defect in property arises when:

"... (a) the vendee does not know or have reason to know of the condition or the risk involved, and

"(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk."

Section 353 of the Restatement, 2d Torts. In the present case the condition of the property was such that plaintiffs Long had reason to know of the defect since it was so conspicuous. Therefore, neither the vendors, defendants Long, nor their agents had a duty to disclose the condition to the plaintiffs Long.

\*      \*      \*      \*      \*      \*

Even if there was no duty to disclose, plaintiffs claim misrepresentations were made on the condition of the property. Plaintiffs contend they asked defendant Adams if the property had a history of water damage and that he responded that the property had no previous flooding problems. An examination of the testimony shows that it is not clear whether Mr. Adams did in fact state that the property had no problems with flooding. However, assuming arguendo that Mr. Adams did say there was no history of water damage with the property, since he was only aware of flooding on the property as a result of Hurricane Agnes[2], that statement in and of itself would not be sufficient grounds to remove the nonsuit. A real estate agent is not expected to be an expert on the physical quality of the property. *Henry v. Babekci [Babecki],* 65 [Pa.] D & C2d 4, 15 (1974). The water mark on the basement wall was obvious, there was a sump pump in the basement and part of the backyard had recently been filled in. These undisputed facts would put a reasonable person on notice that there was a water problem with the property sometime in the past. It cannot validly be contended that plaintiffs were misled by statements made by Mr. Adams. The evidence was right before plaintiffs' eyes.

\* \* \* \* \* \*

There was no conflict in the testimony presented in the instant case, and in making all reasonable inferences in favor of plaintiffs it is apparent that plaintiffs failed to establish elements to sustain a cause of action. Plaintiffs' mortgagee testified that there was a water mark on the wall in the basement. There was no testimony that refuted the presence of the mark or that indicated an attempt to conceal the mark from plaintiffs Long. Because the mark was obvious for anyone to see and any reasonable person upon seeing the mark would have perceived it to be an indication of a flooding problem, defendants had no duty to disclose the condition of the property to plaintiffs. An active concealment of a condi-

tion or a duty to disclose a condition, the elements necessary to establish negligence, fraud, breach of contract or breach of fiduciary duty on the part of defendants, were not established by the plaintiffs.

The nonsuit was properly granted. The motion for removal of the compulsory nonsuit will be denied.

[2] Which yielded what meteorologists call a "100 year rain".

Lower ct. op. at 4–8.