# Krout v. Woods

*Michelle C. Kahan,* for plaintiffs.
*Paul L. Zeigler,* for defendant Darlene Lazore.

CASSIMATIS, *J.,* March 16, 1989 — This matter is before the court on a motion for summary judgment brought by defendant Darlene Lazore.

Ms. Lazore is a realtor associate and agent for Coldwell Banker, Bob Yost Inc. She was contacted by plaintiffs who wanted to sell their home and purchase another. Plaintiffs became aware the Ronald Woods' home was for sale after noticing a listing in the newspaper. Plaintiffs contacted the listing agency, Cauchon-Beddia Inc., regarding the property and spoke with defendant Richard Boucher, the listing agent. Plaintiff then contacted Ms. Lazore to arrange a visit to the property. Ms. Lazore provided plaintiffs with the information contained in the multilist description of the property.

During their initial visit to the property, plaintiffs and Ms. Lazore toured inside the home for approximately 40 minutes and saw everything except the attic. Plaintiffs only voiced three concerns to Ms. Lazore. After noticing some blistering of a section of drywall, plaintiffs inquired about any water or flood-

ing problems.[1] Plaintiffs also asked why the well pit door was off and whether the swimming pool was in working order.

Ms. Lazore contacted defendant Boucher who provided answers to the questions. Assurances were given that even though the property was located within a flood plain, there was no persistent flooding problem. In addition, the swimming pool was allegedly in working order and the well pit door was supposedly being repaired.

The facts are uncontroverted that Ms. Lazore provided material and relevant information to plaintiffs in answer to the three questions asked. They did not inquire further nor did they express any doubts that Ms. Lazore did not disclose all the knowledge she possessed. Defendant Lazore candidly informed the plaintiffs of her lack of personal knowledge of the Woods home and advised plaintiffs to have an expert check the condition of the swimming pool since she (Ms. Lazore) expressed a lack of expertise in evaluating the swimming pool.[2]

Between the execution of the sale agreement on February 24, 1986 and settlement on July 16, 1986, plaintiffs returned to the property several times to examine the pool and creek which flowed nearby.

Plaintiffs allege substantial structural damage to the chimney, garage, living room ceiling, basement, family room and bathroom, all of which continually leak. This exacerbated the rotting of wooden flooring, joists, window frames and steps. This damage

---

1. Plaintiff's concern was the close proximity of a creek to the house, thus raising the question of possible flooding.

2. Additionally, defendant recommended the plaintiffs return to examine the pool at a later date since the home was being shown during the winter and the cover was on the pool at the time.

was not discovered by the plaintiffs until after they took possession of the property.

Plaintiffs' contention is that these defects were not conspicuous during their examination of the house and property and their failure to be aware of these defects was the result of a joint effort· to conceal them by defendant Lazore and the two co-defendants.

Specifically, Ms. Lazore allegedly breached an affirmative duty to inspect the property and ascertain its condition and value and to disclose such findings to the buyers.

The procedural history of this case commenced with plaintiff's complaint filed on November 17, 1986. The three named defendants were the seller, Ronald Woods, listing real estate agent, Richard Boucher, and the agent who showed the property, Darlene Lazore. Defendant Woods filed preliminary objections on December 5, 1986. On January 27, 1987, plaintiffs filed an amended complaint. Defendant Woods' answer to the amended complaint was filed on February 24, 1987. Defendant Boucher filed an answer and new matter on March 6, 1987. Depositions were taken of the plaintiffs and defendant Lazore on April 11, 1988. Depositions of defendants Woods and Boucher were taken on June 11, 1987. On May 31, 1987, plaintiffs filed a reply to new matter of defendant Boucher. Requests for production of documents were made of defendants Woods and Boucher and these were complied with. In addition, defendant Boucher provided answers to interrogatories made by plaintiffs.

On August 11, 1988, defendant Darlene Lazore filed a motion for summary judgment and this matter was listed for one-judge disposition pursuant to rule 30 of the York County Rules of Court. Briefs were filed by the parties. On September 13, 1988,

defendant Lazore filed an answer, new matter and cross-claims against defendants Woods and Boucher.

The court, after reviewing the file and briefs regarding the motion, requested supplemental briefs and oral argument on the following presenting issues:

(1)(a) Is there a duty upon a real estate agent to inspect a property before showing it to an interested party?

(b) Is there a duty upon a real estate agent to inspect a property before showing it to an interested party and to disclose the results of such an investigation to the interested party in the absence of any request for such information?

(c) Is there a duty upon a real estate agent to inspect the property before showing it to the interested party only when a representation is made concerning the condition of the property?

(2) Do the answers to the above issues depend upon whether the agent is the listing agent or a member of the firm that has the listing?

(3) Are the responses affected by to whom the showing agent looks for compensation; or is the showing agent expected to perform these services without compensation?

Plaintiffs cite a recent York County case, *Hall v. Meachum*, no. 87-SU-01160-09, to support the imposition of a duty to inspect upon not only the listing agent, but showing agents as well. Specifically, they rely upon the Real Estate Licensing Act (63 P.S. §§455.101 et seq., hereinafter RELA) and Article 9 of the York County Board of Realtors Code of Ethics cited within *Hall*.[3] We find *Hall* and the objectives

3. It is noted in *Hall*, it was alleged that the defendant agents were members of the York County Board of Realtors

of the authority cited therein to be distinguishable from the instant case.

In *Hall,* plaintiffs retained a real estate agent from Century 21 to assist them in purchasing a home. The seller was represented by Remax Family Tree Realty. The showing agent arranged a visit to the seller's property. While viewing the home, plaintiffs were told by both real estate agents and the seller that the home was newly painted and insulated and appraised by VA and FHA as requiring no repairs. Additionally, plaintiffs were assured that the property was "in good state of repair" and "they would have no difficulty with the property." Plaintiffs were especially pointed to the insulation which, upon later discovery, was found to have obscured rotting structure and water damage. Both defendant agents demurred to the allegation of breach of an affirmative duty to inspect the premises and ascertain all material information as to value and condition and to disclose such information to the buyers. The basis of the demurrers, the lack of actual knowledge of defects, was rejected by the Honorable Judge John H. Chronister, who opined that actual knowledge was not necessary since the standard of care set forth in RELA and the Code of Ethics imposed a duty to inspect and disclose readily discoverable conditions.

The Real Estate Licensing Act (RELA) in section 455.604 prohibits a real estate agent from any substantial misrepresentations or false promises of a character likely to influence, persuade or induce

and thus were governed by the promulgated Code of Ethics. No such allegation has been made in the instant case, however, the applicability of the code in this case has not been disputed. Therefore, we enter our ruling based upon application of the code to the facts before us.

any person to enter into a contract. Similarly, Article 9 of the Code of Ethics states:

"The realtor should avoid exaggeration, misrepresentation or concealment of pertinent facts. He has an affirmative duty to discover adverse factors that a reasonably competent and diligent investigation would disclose."

There are two issues the resolution of which leads us to conclude that defendant Darlene Lazore is entitled to summary judgment as a matter of law.

First, we address the applicability of the above-cited standards to the conduct of Ms. Lazore. The purposes of both the Code of Ethics and RELA are to provide the prospective buyer with all known facts concerning the quality and condition of the property and to prevent deceit, fraud or misrepresentation. Plaintiffs acknowledge there was no discussion pertaining to quality at the time the property was shown to them. Additionally, plaintiffs contend that all Darlene Lazore had to do was request the information they asked to be provided.

In *Hall,* both real estate agents made independent affirmations of the purported quality of the property, without ascertaining the veracity of their representations. Neither agent attempted to ascertain or disclose any adverse factors, but rather made unqualified statements as to the positive attributes of the property of knowledge. Clearly, these actions fell within the purview of the language of RELA and Article 9 set forth above.

In the instant situation, however, the actions of defendant Lazore were markedly different. The property sheet which she provided the plaintiffs which attested to "no flooding problems" was acquired through and solely compiled by defendant Richard Boucher, the listing agent. At the time the plaintiffs posed the three questions, Ms. Lazore

unequivocally stated her lack of personal knowledge of the property in general as well as lack of expertise in swimming pools particularly. She promised to obtain answers from the seller's agent, Mr. Boucher, which she did. At no time did Ms. Lazore represent that the subsequently obtained information was based upon her personal knowledge.

The considerations of this court are whether the agent knew or should have known of the existence of the defect and whether her misrepresentations to the plaintiff were made with this knowledge. The factor which must exist is an intention to deceive or a concrete refusal to ascertain the truth or disclose knowledge.

Real estate agents are responsible for misrepresentation, both willful and negligent. *Aiello v. Edward Saxe Real Estate Inc.*, 508 Pa. 553, 499 A.2d 282 (1985). It is established that a duty exists to disclose conditions dangerous to the purchaser or other persons using the property of another, as well as conditions affecting habitability, where the vendor or his agent possesses such knowledge. *Shane v. Hoffman*, 227 Pa. Super. 176, 324 A.2d 532 (1974). In *Shane*, the court focused upon what constituted the necessary scienter required, which encompassed actual knowledge of the truth or falsity of the representation, reckless ignorance of the falsity or merely providing false information where a duty to know is imposed by reason of special circumstances. *Id.* The agent is liable for representations made when the true conditions were known at the time the representation was made. *Id.* The agent in *Shane* deliberately did not disclose evidence of prior flooding.

Even when a real estate broker's representation was innocent, a material misrepresentation could be found where he was bound to ascertain the truth

before making the representation. *Glansky v. Ervine,* 269 Pa. Super. 182, 192, 409 A.2d 425, 430 (1979). In *Glansky,* the seller informed the broker of termite infestation and directed the broker to inform potential buyers, which he did not. Deliberate non-disclosure is as culpable as a misrepresentation as an intentional affirmation of falsity. *Quashnock v. Frost,* 299 Pa. Super. 9, 15, 445 A.2d 121, 124 (1982). The duty to disclose known latent defects is imposed upon the seller and his broker with whom he deals. *Quashnock, supra.*

In the absence of allegations that Ms. Lazore concealed information obtained or provided embellishments for purposes of effecting a sale, the only action which could be violative of RELA or Article 9 would have to result from a determination that a duty to independently inspect and verify information was contemplated by the Board of Realtors Code of Ethics and that this duty was breached. We are not prepared to extend the scope of liability in this fashion.

The underlying rationale motivating the legislature, courts and the real estate profession in this area is the premise that homebuyers are ill-equipped to evaluate physical defects in houses and property. Although the concept of caveat emptor has been generally relinquished resulting in a trend toward consumer protection, this trend has not reached the degree of liability espoused by plaintiffs. We acknowledge that the advent of computerization and multilisting arrangements has changed the specter of real estate transactions, however the fundamental standards of liability remain.

The Restatement (Second) of Torts §353 posits that the vendor must disclose defects of which he knows or has reason to know where it is not likely that the vendee will readily discover them. How-

ever, the vendor is not required to search for defects, previously unknown to him, before placing a home for sale. *Id.* Therefore, it is unprecedented and harsh to require a more stringent duty upon a non-listing real estate agent to ferret out defects than is placed upon the seller.

Additional factors persuade us to conclude that the Board of Realtors, in stating that an agent conduct a "reasonably competent and diligent investigation," did not intend that each showing agent independently inspect the property. First, there is no direct contact between the showing agent and the seller. Thus, the showing agent is not privy to the seller's knowledge as was the case in *Long v. Brownstone Real Estate Co.,* 335 Pa. Super 268, 484 A.2d 126 (1984) cited by plaintiffs. The seller has not, invariably, entrusted the showing agent with information about the property. Rather, the seller deals exclusively with the listing agent who acts as a conduit, providing information to interested parties and showing agents.

Correlative to the lack of contact between the seller and individual showing agents is the difficulty which would be placed upon each agent as well as the seller if separate inspections were required for each new agent to exhibit the property. This would essentially impede the function of the multilisting system.

Defendant Lazore cites *Henry v. Babecki,* 65 D.&C. 2d 4 (1974) as rejecting the imposition of a duty to inspect the property. In *Henry,* the plaintiff instituted action against the seller and the agents for both the buyer and seller. The plaintiffs retained agent-obtained information about the home from a multilisting service and arranged a visit to the property through the listing broker. Subsequently, the plaintiffs visited the property twice, once to

initially view the premises and again to obtain measurements. The plaintiffs' agent told them he personally knew nothing of the property, but that it was a "good buy."

The court, in determining whether a concealment or misrepresentation occurred which induced plaintiffs' purchase, concluded that it must first find a duty to know or have reason to know of property conditions. The agent's agreement to assist in locating a home, drafting a sales agreement, and negotiating settlement did not itself constitute an express undertaking to provide expertise. *Id.*

Defendant before us made concerted efforts to obtain what she believed to be the answers. The language of Article 9 imposes a duty to "investigate," not independently inspect or verify. It is noted that the "inspection" conducted by Mr. Boucher consisted of a walk through the property and acquiring information from the seller. A greater burden should not be imposed upon the showing agent. Rather, the requirement of Article 9 as applied to the showing agent is a duty to inquire and ascertain; no independent verification should be required unless facts known to that agent lead her to believe that relayed information is false.[4]

We are presented with a motion for summary judgment which, pursuant to Pa.R.C.P. 1035(b), shall be rendered if the pleadings, depositions,

---

4. Other jurisdictions have reached this conclusion also. See *Baker v. Surman,* 361 N.W.2d 108 (Minn. App. 1985) (directed verdict for showing agent who relied upon listing information, only visited property once and informed buyers of his source of information); *Provost v. Miller,* 144 Vt. 67, 473 A.2d 1162 (1984) (no duty to verify absent awareness of falsity); *Lyons v. Christ Episcopal Church,* 71 Ill. App. 3d 257, 27 Ill. Dec. 559, 389 N.E.2d 673 (1979) (realtor merely conduit of seller's information).

answers to interrogatories, admission and affidavits show there is no genuine issue of material fact. In considering a motion for summary judgment, the court must examine the record in the light most favorable to the non-moving party. *Taylor v. Tukanowicz,* 290 Pa. Super. 581, 435 A.2d 181 (1981).

Upon consideration of the file, arguments and briefs presented, we grant defendant Darlene Lazore's motion for summary judgment and enter the following

## ORDER

And now, March 6, 1989, we grant the motion for summary judgment of defendant Darlene Lazore.

The prothonotary is directed to enter judgment for defendant, Darlene Lazore, and against plaintiffs, Rickey Krout and Sharon Krout.

The prothonotary is directed to provide notice of the entry of this opinion and order as required by law.