Martino, Appellant, *v.* Great Atlantic & Pacific Tea Company.

230

Argued April 22, 1965. Before Bell, C. J., Mus-manno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Norman Seidel,* with him *Hogan & Scott,* for appellants.

*John Field Oldt,* with him *Fox, Oldt & Hambrook,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 13, 1965:

Appellants, husband and wife, went shopping, on September 29, 1961, in appellee's self-service market located in Easton. While they were proceeding through the produce department, wife appellant slipped and fell to the floor. Husband appellant, who was in front of his wife, did not see the fall but turned and saw her sitting on the floor. He testified that, immediately after the fall, he observed grape juice on his wife's left shoe and on the floor where she had fallen and a grape skin about a half a foot from where she was sitting. There was no evidence as to how any grapes got onto the floor or as to how long any grapes might have been there prior to the fall.

To recover their respective damages, appellants commenced an action of trespass which, after completion of their case in chief, terminated in the granting of appellee's motion for compulsory nonsuit. This appeal followed the refusal by the court en banc of appellants' motion to take off the nonsuit.

The light in which we view the record is governed by our oft-stated standard of review, namely, that a nonsuit should be entered only in a clear case, and on appeal from the refusal to take off a compulsory nonsuit, the plaintiff must be given the benefit of all favorable testimony and every reasonable inference of fact arising therefrom and all conflicts therein must be resolved in favor of plaintiff. *Penn v. Isaly Dairy Co.,* 413 Pa. 548, 198 A. 2d 322 (1964); *Schwartz v. Urban Redev. Auth.,* 411 Pa. 530, 192 A. 2d 371 (1963); *Miller v. McMinn's Industries, Inc.,* 410 Pa. 234, 188 A. 2d 738 (1963).

The evidence discloses that grapes were displayed by appellee in an unpackaged condition on a counter. Bags for customer use were stored in the center of the counter approximately seven feet from the grapes. The scale at which produce was weighed and priced was across a two-foot wide aisle from the grape counter. Customers put grapes into bags and took them to the scale or carried them in their hands, unbagged, or in shopping carts to the scale, where a store employee priced them or bagged and priced them.

One of appellee's employees, called as a witness for appellants, testified that he had been employed in the produce section of the market for about a year prior to the accident. The court below succinctly summarized his testimony as follows: "From his experience, he stated lettuce leaves, grapes and cherries tended to fall on the store floor with more frequency than other items although other things such as bottles of jams and jellies, oranges, etc., also occasionally fell to the floor. He testified grapes had fallen from the counter on numerous occasions and customers would either step on them or carts would be rolled over them and there would be black stains left on the floor of the store. He stated these stains were present on the floor by the counter where the grapes were displayed on many occasions during 1960 and until the accident in 1961. One of his duties was to keep the produce area clear of debris and he was under instructions when he was in the area if he saw anything on the floor to remove it and he did keep the floor clean. He also swept the floor and the floor was mopped."

We agree with the court below that, viewing the evidence in the light of the standard hereinabove stated, wife appellant fell as the result of slipping on a grape on the floor. The question is whether the presence of the offending grape on the floor imposed liability on appellee.

In order to recover, appellants must prove that appellee was negligent and that its negligence was the proximate cause of the accident. *Cushey v. Plunkard,* 413 Pa. 116, 196 A. 2d 295 (1964); *Idlette v. Tracey,* 407 Pa. 278, 180 A. 2d 37 (1962).

No citation of authority is necessary to support the hornbook proposition that the mere happening of an accident does not impose liability on any party. The negligence of the defendant in a trespass action must be proved by direct or circumstantial evidence. An accurate statement of the law of Pennsylvania applicable to the instant situation is set forth in §343 of the Restatement of Torts as follows: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them." *Kubacki v. Citizens Water Co. of Wash.,* 403 Pa. 472-475, 170 A. 2d 349 (1961).

Appellant's burden was to prove that the dangerous condition of appellee's premises causing the fall resulted from appellee's negligence; that appellee was aware that grapes and other refuse were on the floor and made no efforts to remove them. No such proof was, however, produced. Appellee was not an insurer of the safety of business visitors and owed only the duty of reasonable care under the circumstances, specifically, to correct unsafe conditions discoverable through the exercise of reasonable care and diligence. The testimony disclosed that one of appellee's employees was required to and did remove items of refuse from the floor when they were noticed.

The law of this Commonwealth remains as it was pronounced in *Markman v. Bell Stores Co.,* 285 Pa. 378, 132 A. 178 (1926), wherein we stated at p. 382: "The mere presence of such refuse, as described, does not in

itself show negligence, for this condition may temporarily arise in any store of this character, though the proprietor has exercised due care; and, if it appears that proper efforts are made to keep clean the passageways so they may be safely traversed, he is not to be held responsible if someone accidentally slips and falls."

So far as this record discloses, the offending grape might have found its way to the floor as the result of actions by husband appellant or wife appellant. There is no evidence from which the jury might reach a conclusion as to the cause of the presence of the grape in the aisle, and jurors may not be permitted to reach conclusions based upon guess or conjecture.

Nor can we accept appellant's argument to the effect that the display of non-packaged grapes on a counter some seven feet from the bags and across an aisle from the scale constitutes negligence in and of itself, since every reasonable effort was made to keep the passageway clean.

Judgment affirmed.

Mr. Justice JONES and Mr. Justice COHEN dissent.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur on the ground that appellants have failed to adduce evidence from which a jury could reasonably infer that appellee did not exercise the requisite degree of care in maintaining, in a safe condition for its business visitors, the passageway in which appellant-wife fell.

Appellants had the burden of establishing that appellee failed to exercise due care in ascertaining the existence of the refuse which precipitated the fall and in warning of or correcting that condition. See *Markman v. Bell*, 285 Pa. 378, 383, 132 Atl. 178, 180 (1926). Giving appellants the benefit of all favorable testimony and every reasonable inference of fact arising there-

from and resolving all conflicts in their favor, *Penn v. Isaly Dairy Co.,* 413 Pa. 548, 198 A. 2d 322 (1964), this burden was not met and a nonsuit was properly entered.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

There can be an honest difference of view as to whether the advantages of a Serve-Yourself store outweighs its disadvantages. The writer of this opinion prefers the old fashioned store where you go in and tell the clerk what you want and he goes and fetches it like a faithful dog returns to its master a thrown stick. But in the self-service stores, especially in the vast auditorium-sized ones, you must search for your desired purchase with the hunting, ferreting, probing, testing, scouting and, sometimes, the perils the arctic explorers confronted in seeking the Northwest Passage. The self-serving purchaser must push through aisles encumbered with wire baskets, traverse lanes of travel menaced by sacks of potatoes, maneuver over floors strewn with, and lubricated by, vegetables and fruits, all of which frequently make a tour through a supermarket resemble an obstacle course in a steeplechase.

In the case at bar, Ruth J. Martino and Daniel T. Martino were cruising through the Great Atlantic and Pacific Tea Company Supermarket in Easton with a shopping cart into which they had piled a cargo of various food-laden cans, they had picked up a supply of fresh fish and were now in search of lemons to go with the fish. Daniel T. Martino was piloting the conveyor, and his wife trailed after him, as they both scanned the towering groceries-crammed cliffsides of the passageways for the other supplies they sought. Unsuccessful up to this point in locating the lemons to go with the fish, Ruth J. Martino was suddenly felled by an underfoot assault of grapes. Now, the Martinos

were not looking for grapes, they had no need or desire to obtain grapes, but grapes is what they got, together with, on the part of Mrs. Martino, a broken leg.

The grapeshot which shattered Mrs. Martino's leg came from the floor where vegetable and fruit had been crushed by the heels and the shopping carts of previous food-hunting customers.

How did the grapes get to the floor? The evidence was uncontradicted that masses of grapes were piled on a counter which was separated, by a cruising lane, from the scales where they were to be weighed. Patrons would pick up the grapes and carry them loosely to the scales. As there is often a slip between the cup and the lip, there was often a slip of grapes from their clusters as they were being carried across the passageway to the scales. For grapes to detach from their stems and splash to the floor was something the owners of the Great Atlantic and Pacific Tea Company Supermarket could anticipate. In addition, the floor showed that grapes fell like dancing raindrops and painted the floor with radiating spots which could not have escaped the notice of the store owners.

Not only that, an employee of the Supermarket testified that the cascading of grapes was accompanied in the splashing serenade by falling cherries and winging lettuce leaves. Oranges also rolled into the aisles and, on occasion, bottles of jams and jellies contributed to the concert by falling from the shelves or from customers' hands and bursting on the floor. Into this terrestrial niagara came the faith-abiding Martinos to enrich the coffers of the Great Atlantic and Pacific Tea Company.

They were entitled to protection from foreseeable harm by those who invited them into their store to sell them their products. These paying customers did not get *that* protection. In addition, they left the store, with Mrs. Martino disabled by a broken leg and Mr.

Martino saddled with an enormous medical bill, plus the loss of the services of his wife for a considerable period of time. They went to court to ask for recompense for the damage done to them by the Great Atlantic and Pacific Tea Company and were told that the store owners were not responsible because the Martinos did not prove who had lubricated the floor with grape juice. Who else but the A. & P. Store was responsible for the grapes on the floor?

The court then added insult to injury by declaring that the particular grape which became the culpable lubricant under Mrs. Martino's shoe "could have been brushed off the counter by the husband." There is not a grape-seed of evidence to substantiate this gratuitous assumption. The husband's hand or arm was nowhere near the grape counter because, as has been said, he was looking for lemons, not grapes. As if this assumption by the court did not sufficiently defy the evidence and common sense, it said further that the grape "could have been knocked off by the wife plaintiff as she fell." Knocked off *what*? The Court here was mixed up in its order of events. Mrs. Martino fell because of the grapes *already on the floor*. How could Mrs. Martino knock off a grape (from *what* we do not know) *after* she fell and then have it *precede* the fall and thus become the cause of the fall?

Mrs. Martino testified that she "fell on a grape by the scale." Mr. Martino testified that "there was grape juice on her shoe and there was grape juice on the floor where she slipped."

Then the majority of this Court, with the case appealed here by the plaintiffs from the entry of the nonsuit in the court below, compounded the error of the lower court by asserting: "the offending grape might have found its way to the floor as the result of actions by husband appellant or wife appellant." An appellate court has no more right to guess than a lower court

and, in fact, it should be less disposed to squeeze from the decayed fruit of supposition the acerbic stale juice of a non sequitur. Not content with essaying into the realm of fanciful conjecture, the majority opinion plunges over the brink of wilful negation by asserting that "there is no evidence from which the jury might reach a conclusion as to the cause of the presence of the grape in the aisle." As one reads the record one can almost smell the grapes on the floor and see how they got there. J. F. Burnett, Jr., clerk in the store, testified: "there were some items that tended to fall on the floor more than others. Q. What were those items? A. Oh, lettuce leaves, *grapes* and cherries. Q. Would you say that those three items fell on the floor more often than any other? A. Yes, I would think so. Q. I assume that you on occasion saw these items fall on the floor, is that correct? A. That's correct. Q. Or you saw them on the floor? A. That's right. Q. Now, was there anything that you can recall as indicating that *grapes* had fallen on the floor numerous times at the edge of this Counter 'A'? A. Well, *grapes would fall there and people would either step on them or carts would be rolled over them, and there would be a black mark left on the floor.*" (Emphasis supplied)

This is not a monumental case and should not require a long dissertation and yet to the Martinos it is a very serious matter to break a leg in a store and to see justice fractured in a court of law.

It is so fundamental as to require no citation " 'that it is incumbent upon the owner of premises upon which persons come by invitation, express or implied, to maintain such premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended.' "[1]

Thus, we have a case here where the owners of the A. & P. Supermarket knew that grapes were falling to

---

[1] *Nettis v. General Tire Company*, 317 Pa. 204, 209.

the floor due to their failure to hire enough clerks and yet they failed to keep the floor clean. Where a store owner creates a dangerous condition by his own antecedent conduct, it is not necessary to prove that he knew of the specific square inch where the invitee came to grief, or of the particular grape which triggered the winepress of disaster.[2]

There was positive proof in this case that from February, 1960 to September, 1961, grapes had been falling to the floor, leaving stains on the floor. Thus for at least 18 months the owners of the store were aware of the falling grapes, were aware that crushed grapes can be slippery, aware that paying patrons could be hurt by slipping, and yet they did nothing to avert the disaster which befell Mrs. Martino. The jury could find here that the defendant company was flagrantly negligent in not stationing a clerk at the grape counter, in not warning customers not to drop grapes, in not putting up signs to notify patrons of the grapes on the floor, and in not having the floor swept at such intervals as to make it reasonably safe for customer traffic.

With the demonstrated *and uncontradicted facts* in this case, it is absolutely inconceivable to me how, in law and justice, a nonsuit could be entered for, if there was ever a prima facie case of negligence on the part of a store owner, it is here. To deny the plaintiffs an opportunity to prove their case before a fact-finding tribunal not only crushes out their legal rights but tramples out the vintage of the grapes of wrath in the breasts of many lovers of law and justice.

---

[2] *Hayden v. Philadelphia*, 381 Pa. 134.