Seneca Lyn GAYLORD, a minor, by her parents and natural guardians, Jennifer GAYLORD and Robert Gaylord, and Jennifer Gaylord and Robert Gaylord, individually, Appellants

v.

MORRIS TOWNSHIP FIRE DE-PARTMENT a/k/a Morris Fire Department.

Commonwealth Court of Pennsylvania.

Argued June 10, 2004.

Decided July 13, 2004.

Matthew D. Jones, Sayre, for appellant.

J. David Smith, Williamsport, for appellee.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Jennifer and Robert Gaylord, individually and on behalf of their minor child, Seneca Lyn Gaylord (collectively Appellants), appeal from a decision of the Court of Common Pleas of Tioga County denying their post-trial motion for a new trial. At issue in this appeal are the trial court's jury instructions regarding the real estate exception to governmental immunity. For the reasons set forth herein, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 13, 1998, Appellants attended the Morris Rattlesnake Hunt, a fundraising event held every year by the Morris Township Fire Department (Fire Department) on its premises in Morris, Pennsylvania. Among the events at the Rattlesnake Hunt is a one-pitch softball tournament played by approximately eighteen local softball teams not affiliated with the Fire Department. The baseball

field is permanently affixed to the Department's property. During the Rattlesnake Hunt other attractions, including a live rattlesnake display, flea market, vending and concession areas, are located beyond the outfield fence of the baseball field approximately 300 feet from home plate. While Appellants were observing the rattlesnake display an errant softball struck seven month-old Seneca Gaylord in the head. She suffered serious injuries including two fractures of the skull and audiological damage.

Mr. and Mrs. Gaylord filed a complaint against the Fire Department seeking compensatory damages for their daughter's injuries, their own mental anguish, and medical expenses. In their complaint, Appellants averred that the Fire Department had been negligent in the care, custody and control of its real estate—namely the design and layout of the baseball field and the placement of the rattlesnake display and other attractions near the outfield.

The Fire Department filed a motion for summary judgment invoking governmental immunity pursuant to Section 8541 of the Judicial Code, 42 Pa.C.S. § 8541.[1] The trial court denied the motion, reasoning that there was a genuine issue of material fact regarding the applicability of the real property exception to governmental immunity set forth in Section 8542.[2] The parties proceeded to a jury trial on August 26, 2003.

During the four-day trial, Appellants attempted to prove that the injuries to Seneca Gaylord were the result of the Department's negligent maintenance and management of its real estate, particularly the layout of the baseball field and the proximate location of the various attractions at the Rattlesnake Hunt. The essence of the Fire Department's theory was that an intervening act of a third-party softball participant caused Seneca's injuries. To that end, the Department offered the testimony of Chief Dean Kreger and Assistant Fire Chief Doug Cohick, who founded the softball tournament in 1984 and has coordinated the event every

1. "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. It is undisputed that the fire department is a "local agency" as that term is defined in 42 Pa.C.S. § 8501 ("A government unit other than the Commonwealth government.").

2. § 8542. Exceptions to governmental immunity

(a) Liability imposed.—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
(1) The damages would be recoverable under common law ... if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) ... and
(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

* * *

(3) Real property.—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency.
42 Pa.C.S. § 8542.

year. Cohick could not recall any injuries from foul balls during his twenty-year tenure, Notes of Testimony, Jury Trial, at 575 (N.T. ——). However, Chief Kreger recalled that several attendees had been hit by softballs during that time resulting in minor bruises. Neither witness could recall any foul ball traveling as far as the one that hit Seneca Gaylord. Significantly, Cohick testified that he supplied the softball teams with "restricted flight softballs" for the 1998 tournament; however, he later learned that for the first time that year individual players used "double wall" bats that enabled them to hit the ball further. N.T. 576.

The jury returned a verdict in favor of the Fire Department by answering the following question in the negative: "Do you find that the Defendant was negligent with respect to the care, custody and control of its real property?" Verdict Slip, Question 1.[3] Appellants filed a motion for post-trial relief pursuant to Pa. R.C.P. No. 227.1. Appellants argued, *inter alia,* that the trial court's instructions to the jury were erroneous and that they were entitled to a new trial. The trial court denied Appellants' motion, and this timely appeal followed.[4] Appellants continue to challenge certain aspects of the jury charge and ask this Court to reverse the trial court's decision denying them a new trial.

## II. STANDARD AND SCOPE OF REVIEW

When analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion. *Harman v. Borah,* 562 Pa. 455, 466–467, 756 A.2d 1116, 1122 (2000).

There is a two-step process that a trial court must follow when responding to a request for new trial.... First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial.... The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

*Id.* at 467, 756 A.2d at 1122 (citations omitted). In this case, the trial court ended its inquiry after the first step, concluding that its instructions to the jury were correct, not mistaken. It is that initial, and in this case final, decision which we must scrutinize for legal error. *Id.* at 468, 756 A.2d at 1123. Our scope of review is limited to the trial court's stated reasons for its conclusion. *Id.*

A trial court has wide discretion in phrasing jury instructions, and our scope of review in examining those instructions is to determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of

---

3. The jury was directed not to answer the remaining two questions on the verdict slip if their answer to Question 1 was "No." The unanswered questions were as follows: (2) Was the Defendant's negligence with respect to its real property, the factual cause of Plaintiffs' harm? and (3) State the amount of damages, if any, sustained by: Plaintiff, Seneca Lyn Gaylord.

4. Appellants initially appealed to the Superior Court on December 18, 2003. The Superior Court transferred the matter to this Court since it involved issues of governmental immunity. *See* Pa. R.A.P. 751; 42 Pa.C.S. § 762(a)(7).

the case. *Stewart v. Motts,* 539 Pa. 596, 606, 654 A.2d 535, 540 (1995). A charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." *Id.* (quoting *Voitasefski v. Pittsburgh Rys. Co.,* 363 Pa. 220, 226, 69 A.2d 370, 373 (1949)). A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. *Id.* In reviewing a trial court's charge to the jury we must look to the charge in its entirety and not to challenged words or passages out of context. *Id.*

## III. GOVERNMENTAL IMMUNITY AND THE REAL PROPERTY EXCEPTION

Under what is commonly referred to as the Political Subdivision Tort Claims Act, local government agencies are immune from liability for their negligence unless their actions fall within an exception enumerated by statute and would otherwise subject them to liability at common law. 42 Pa.C.S. §§ 8541–8542. At issue in this case was whether the real property exception to governmental immunity was applicable. That exception provides that a local agency may be liable for its employees' or its own negligence related to the "care, custody or control of real property" in its possession. 42 Pa.C.S. §§ 8542(a)(2), 8542(b)(3).

Of particular importance in the present case is our Supreme Court's holding in *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), a seminal case on the scope of the real property exception. In *Mascaro,* a juvenile escaped from a detention center operated by the City of Philadelphia, broke into the Mascaros' residence and terrorized the family. Plaintiffs sought damages from the city, alleging that its negligence in maintaining its property allowed the juvenile to escape and commit the criminal acts. The *Mascaro* court held that the city was immune from suit because

> the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect *of the land itself* causes the injury, *not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.*

*Id.* at 363, 523 A.2d at 1124 (emphasis added). With this background in mind, we proceed to Appellants' specific issues on appeal.

## IV. ANALYSIS

Appellants challenge the trial court's jury instructions on two grounds. They contend that the trial court erred by including the Fire Department's Proposed Point for Charge No. 22 in its charge to the jury and by rejecting Appellants' Proposed Point for Charge No. 29. Each proposed charge related to the legal standard for imposing tort liability upon a landowner.

The trial court's jury instruction stated as follows:

> If the claim [sic] dangerous condition is caused or created by a third person it must be shown that the condition existed for a sufficient period of time before the accident to have afforded the land possessor a reasonable time to discover the condition.

N.T. 701–702.[5] Appellants assert that the "notice" requirement contained in this in-

**5.** Proposed Point for Charge No. 22 read as follows: "If a claimed dangerous condition is caused or created by a third person, it must be shown that the condition existed for a sufficient length of time before the accident to have afforded the possessor a reasonable time

struction was inappropriate. They contend that the proximity of the ballfield to the festival attractions, in particular the rattlesnake display, was an inherently dangerous condition in the land. To succeed in their appeal, Appellants must demonstrate that the trial court committed a fundamental and prejudicial error of law in fashioning its jury charge on this point.

Appellants' argument is flawed because it conflates a landowner's use of the land with the condition of the land itself. Whether a dangerous condition existed on the Fire Department's property, and whether the Fire Department created or contributed to that condition, were the ultimate issues at trial and for the jury to decide. We cannot fault the trial court because it did not formulate the jury charge based solely on Appellants' theory of liability. Indeed, it would have been error to foreclose the Fire Department's theory of the case and, in effect, create a standard of strict liability. The trial court was obligated to compose its jury charge so that the jury could consider *both* theories of the case while deciding how to apply the law to the facts in evidence.

Any action involving a claimed exception to governmental immunity must first be viable at common law against one not having the immunity defense. 42 Pa.C.S. § 8542(a)(1). The trial court's above-quoted instruction recites the common law on premises liability. Such liability was explained by our Supreme Court in *Martino v. Great Atlantic & Pacific Tea Company*, 419 Pa. 229, 213 A.2d 608 (1965). In that case, plaintiff, an invitee, brought an action against a grocery store for injuries sustained when she slipped and fell after stepping on a grape on the floor. There was no evidence offered as to how the grape got onto the floor or how long it had been there prior to the accident. In upholding the trial court's refusal to take off a nonsuit entered in favor of the defendant, the Court reasoned as follows:

> An accurate statement of the law of Pennsylvania applicable to the instant situation is set forth in Section 343 of the Restatement of Torts as follows: 'A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them....'
>
> Appellant's burden was to prove that the dangerous condition of appellant's [sic] premises causing the fall resulted from appellee's negligence; that appellee was aware that grapes and other refuse were on the floor and made no efforts to remove them. No such proof was, however, produced. Appellee was not an insurer of the safety of business visitors and owed only the duty of reasonable care under the circumstances, specifically, to correct unsafe conditions discoverable through the exercise of reasonable care and diligence.

*Martino*, 419 Pa. at 233, 213 A.2d at 610 (citation omitted).[6] We hold that the trial

to discover the condition, in other words, they are to allow the landowner to act. *Martino v. Great Atlantic & Pacific Tea Co.*, 419 Pa. 229, 213 A.2d 608 (1965)." Defendant's Supplemental Points for Charge No. 22. We note that the charge actually given by the trial court was, for all intents and purposes, identical to the Fire Department's proposed point for charge.

6. In *Moultrey v. Great A & P Tea Company*, 281 Pa.Super. 525, 422 A.2d 593 (1980), our Superior Court was confronted with a factual scenario virtually identical to the slip-and-fall in *Martino*. The *Moultrey* court concluded that *Martino* was controlling and reached the same result. Relevant to our analysis is the Superior Court's explanation regarding whether the possessor of land, in order to be liable, had to have notice of the harmful transitory condition caused by the offending fruit. The Court explained:

court's jury instructions with respect to notice to the landowner as it pertains to premises liability was appropriate. The trial court's jury charge accurately described the law.

In their second issue, Appellants contend that "at the very least, the [Fire Department's] care, custody, and control of its real estate was a concurrent cause of the dangerous condition that resulted in Seneca Gaylord's injuries." Appellants' Brief at 27. Therefore, Appellants argue, the trial court erred by not charging the jury with their Requested Point for Charge No. 29, which they claim was related to the issue of concurrent causes and the real estate exception.[7] Appellants also argue that the trial court erred by charging the jury with language from *Mascaro*. Appellants opine that *Mascaro* applies only to those cases where the plaintiff's injuries are traceable solely to a third party independent of the defendant political subdivision, and that subsequent appellate decisions have "radically departed" from the analysis of *Mascaro*. Appellants' Brief at 27.

 Once again Appellants ask us to review the trial court's jury charge in a way that requires acceptance of their theory that the Fire Department was at least partially responsible for the dangerous condition that led to Seneca Gaylord's unfortunate injuries. In our view, the trial court had no choice but to instruct the jury on *Mascaro*, in which our Supreme Court held that the municipal defendant was immune from suit because

> the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect *of the land itself* causes the injury, *not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.*

*Mascaro*, 514 Pa. at 363, 523 A.2d at 1124 (emphasis added). The Fire Department's immunity defense fits squarely within the *Mascaro* analysis: the Fire Department's property, if defective in some way, did not cause Seneca Gaylord's injuries but merely facilitated the act of a softball player.

Contrary to Appellants' suggestion, *Mascaro* has not been eviscerated by subsequent decisions such as *Grieff v. Reis-*

---

> Where, however, the evidence indicates that the transitory condition is traceable to persons other than those for whom the owner is, strictly speaking, ordinarily accountable, the jury may not consider the owner's ultimate liability in the absence of other evidence which tends to prove that the owner had actual notice of the condition or that the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it.
> *Moultrey*, 422 A.2d at 596.

7. According to Appellants' brief, their Proposed Point for Charge No. 29 was as follows:

> Regarding the real property exception, liability may not be imposed upon the defendant where a single party unrelated to the defendant was the sole cause of the plaintiffs' injuries. However, the defendant may be found liable if the defendant's negligent actions are responsible for the plaintiffs'

injuries or the defendant's negligent actions, together with those of another negligent party, caused the plaintiffs' injuries. Appellants' Brief at 13. We note, however, that this proposed point for charge does not appear in the certified record, nor did the trial court address the omission of the point in its opinion. The trial court noted that Appellants raised the issue in their post-trial motion, "but chose not to brief the same. We must therefore conclude that [Appellants] have conceded that the only viable argument is the one addressed in their brief and now disposed of by this opinion." Trial Court Opinion at 9 (referring to the notice to landowner issue discussed in the first part of our analysis section). Because the issue of the trial court's omission of Appellants' Proposed Point for Charge No. 29 is technically waived, and because the record is deficient, we shall only consider the legal arguments raised by Appellants relative to this issue.

*inger,* 548 Pa. 13, 693 A.2d 195 (1997). In that case, Robert Grieff, Chief of the Emlenton Volunteer Association, used paint thinner to clean the floor of the fire station. While Mrs. Reisinger was visiting the station the paint thinner ignited, engulfed her in flames and caused severe injuries. The trial court denied a defense motion for summary judgment and held that the alleged negligent care of the fire station fell within the real property exception to immunity. This Court reversed because the Reisingers did not assert that the real property itself was defective. The Supreme Court reversed our decision, finding that Grieff's negligent care of the fire association's property caused the fire and that, under the plain language of the real property exception, Grieff and the association were not immune from liability for Mrs. Reisinger's injuries. The Court distinguished *Grieff* from *Mascaro* and other cases where "the real property exception did not apply because the government's property only facilitated injuries caused by third parties ... We intended *Mascaro* and its progeny to apply in similar cases where third parties cause the harm." *Id.* at 16, 693 A.2d at 197 (emphasis added). The Court's explanation speaks for itself; *Mascaro* is still valid precedent.

## V. CONCLUSION

Appellants' allegations of error with respect to the trial court's jury instructions are without merit. We have reviewed the jury charge in its entirety and find that it clearly and accurately explained the issues and the applicable law regarding premises liability and governmental immunity. The trial court did not abuse its discretion by denying Appellant's post-trial motion for a new trial. Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 13th day of July, 2004, the order of the Court of Common Pleas of Tioga County dated November 20, 2003 in the above-captioned matter is hereby affirmed.

Judge SMITH–RIBNER concurs in the result only.