NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4475
_____

MARION FELIX,

Appellant

v.

GMS, ZALLIE HOLDINGS, INC., incorrectly captioned as
"SHOPRITE OF KNORR STREET", "SHOPRITE #440"
and "ZALLIE SUPERMARKETS, INC.";
CANADA DRY DELAWARE VALLEY BOTTLING COMPANY;
SHOPRITE OF KNORR STREET; SHOPRITE 400;
ZALLIE SUPERMARKETS, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 2:10-cv-04654)
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit LAR 34.1(a)
September 20, 2012
_____

Before: AMBRO, GREENAWAY, JR., and O'MALLEY[*], *Circuit Judges*.

_____

(Opinion Filed: October 11, 2012)

_____

[*] Hon. Kathleen M. O'Malley, Circuit Judge, United States Court of Appeals for the
Federal Circuit, sitting by designation.

_____

OPINION

_____

GREENAWAY, JR., *Circuit Judge*.

This case arises from the District Court's order granting summary judgment to Appellees GMS Zallie Holdings, Inc. ("GMS") and Canada Dry Delaware Valley Bottling Company ("Canada Dry"). Appellant Marion Felix ("Felix") brought a negligence action against Appellees following a slip and fall incident in a ShopRite grocery store. Appellees each moved for summary judgment alleging that the record did not contain evidence indicating notice or constructive notice of the condition contributing to Felix's fall. The District Court granted the Appellees' motions, and Felix now appeals. For the reasons stated herein, we will affirm the District Court's order and opinion.

## I. **BACKGROUND**

Because we write primarily for the benefit of the parties, we recount only the essential facts.

On September 2, 2008, Felix was shopping at the ShopRite grocery store located at Knorr Street in Philadelphia, Pennsylvania. While shopping near a freezer section, she slipped on a puddle of liquid and fell. As she lay on the ground, she observed that the puddle contained a clear liquid with dust particles floating on the surface. She could not identify the source of the liquid and was unaware of how long it had been there.

2

The store manager, Mike Roth ("Roth"), responded to the incident and noted that there had been a Canada Dry pallet in the vicinity of the accident ten to twenty minutes earlier. Consequently, he speculated that the liquid had come from the pallet, although he had not seen any liquid leaking from the pallet and was unaware of any liquid being on the floor before the incident. Anthony Sofia ("Sofia"), Felix's boyfriend, and Sean Early ("Early"), a Canada Dry employee in charge of stocking products, were also in the store that day. Sofia was not near Felix at the time of the incident, but testified that he noticed the clear puddle of liquid with a footprint in it upon arriving to the area of the fall. Early testified that he had spilled a can of orange Sunkist soda earlier in the day, but had cleaned up the spill.

On November 17, 2011, the District Court granted Appellees' motions for summary judgment on the ground that there was not sufficient evidence to raise a genuine dispute of fact regarding either defendant's actual or constructive notice of the puddle of liquid. Felix filed a timely appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291.

Our standard of review applicable to an order granting summary judgment is plenary. *Huston v. Proctor & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citing *Knabe v. Boury Corp.*, 114 F.3d 407, 410 n.4 (3d Cir. 1997)).

3

## III. ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc) (citing Fed. R. Civ. P. 56(c)).[1] The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010) (internal citation and quotation marks omitted). In determining whether summary judgment is warranted, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 181 (3d Cir. 2009). "Further, '[w]e may affirm the District Court['s order granting summary judgment] on any grounds supported by the record.'" *Kossler v.*

---

[1] Fed. R. Civ. P. 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word — genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

*Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Nicini v. Morra*, 212 F.3d 798, 805

(3d Cir. 2000)).

> Under Pennsylvania law, a negligence claim has four elements:
>
> (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another.

*Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005).

To establish a breach of duty, Felix must prove that GMS or Canada Dry "had

either direct [actual] or constructive notice of the foreign substance on the floor as a

potentially dangerous condition." *See David v. Pueblo Supermarket of St. Thomas*, 740

F.2d 230, 233 (3d Cir. 1984) (internal citation omitted). "[T]he issue of *prior* notice to

the store, either actual or constructive, of an unreasonable risk of harm is more difficult to

establish [than establishing the presence of a foreign substance on the floor]." *Id.* at 234

(emphasis in original). Actual notice exists if the store had been warned about the

condition of the liquid on the floor beforehand. Alternatively, a party may show

constructive notice by "demonstrating that the floor condition had existed for such a

length of time that the storeowner, in the exercise of ordinary care, should have been

aware of the condition." *See id.* at 236.

Felix argues that the District Court erred in granting summary judgment in favor

of both GMS and Canada Dry. In doing so, she asserts that there was sufficient evidence

in the record to create a dispute of fact as to whether GMS (as the owner and operator of

the ShopRite store) had both actual and constructive notice. According to Felix, GMS had actual notice of the hazardous liquid condition based on Roth's testimony that the liquid may have come from the Canada Dry pallet or from the nearby freezer area. She also argues that the dust on top of the puddle provided evidence that it had been there for a sufficiently long period of time to establish constructive notice. Similarly, Felix seizes on Early's testimony indicating that he had spilled an orange soda in the area earlier that day as evidence of Canada Dry's notice and creation of the hazardous liquid condition. We hold, as the District Court did, that Felix's arguments fail since they do not create a dispute of fact as to how long the hazardous liquid condition existed.

To begin with, there is no evidence that either GMS or Canada Dry had actual notice of the hazardous liquid condition. Contrary to Felix's assertions, Roth's testimony provides no indication that any representative of the grocery store was aware of the puddle on the floor. His speculation about the Canada Dry pallet is just that — speculation; he neither observed the liquid coming from the pallet nor had any knowledge that a spill was caused in that way. Although Early admitted to spilling a can of Sunkist soda at an earlier time, his testimony that he cleaned up the spill with paper towels and Windex cleaning solution, combined with the fact that the liquid he spilled was orange and not clear, render this insufficient evidence of notice on behalf of Canada Dry.

Felix's constructive notice arguments must also fail. Felix asserts that there is a genuine issue of fact regarding constructive notice based on the following: (1) Roth's testimony regarding the safety inspection procedures for the store; (2) Felix's testimony

6

that there was dust in the liquid puddle at the time of her fall; and (3) Roth's testimony indicating that a Canada Dry pallet was in the area ten to twenty minutes before her fall.

Felix asserts that GMS failed to use reasonable care because the ShopRite store did not monitor for spills, thus enabling dangerous conditions to exist for periods of time without a cure. In doing so, she cites Roth's testimony stating that there were no set times for monitoring, but that there was a schedule for monitoring the floors that lasted from morning to night each day. *See* App. at 82-83. Because Roth could not confirm any precise time at which the floors were monitored, Felix attempts to characterize the testimony as evidence that no such policy or procedure existed. Such characterization is inaccurate. App. at 86 ("It's not set to a certain time or log or written. The maintenance people are told when they are cleaning and mopping to get around the store and check. That to me is an inspection."). Consequently, GMS's alleged lack of monitoring procedures is insufficient evidence of constructive notice in this case.

As the District Court properly noted, Felix's statement that there was dust in the puddle is also insufficient to show constructive notice. We have previously rejected this argument in similar cases where, as here, the plaintiff "offered no evidence of how much dust was found, how long it would have taken for dust to accumulate, or whether the dust was picked up off the floor by the spreading [liquid] or the force of [plaintiff's] fall." *Saldana v. Kmart Corp.*, 260 F.3d 228, 234 (3d Cir. 2001). Here, Felix stated that there were approximately six or seven dust balls (each the size of one quarter of a pencil eraser); however, the presence of the dust in the puddle after Felix's fall still "does not

7

inform any decision as to the amount of time the [liquid] was on the floor before the fall." *Id.* Consequently, the District Court did not err in rejecting her constructive notice argument on this ground.

Similarly, the fact that the Canada Dry pallet was in the same area before the fall does not imply any form of notice because there is no evidence indicating that the pallet was leaking, had liquid near it or had otherwise caused the liquid puddle on the floor. Because we require more than mere speculation to establish constructive notice, this argument must also fail. *See Myers v. Penn Traffic Co.*, 606 A.2d 926, 930 (Pa. Super. Ct. 1992) (citing *Martino v. Grant Atl. & Pac. Tea Co.*, 213 A.2d 608, 610 (Pa. 1965)).

The record is devoid of any evidence indicating how the hazardous condition came about or indicating that either GMS or Canada Dry was previously aware of the liquid puddle. As such, the District Court did not err in concluding that Felix's speculative assertions failed to create a genuine dispute of fact.

B. Spoliation

Felix also argues that the District Court erred in denying her request for a spoliation inference based on GMS's failure to provide security camera footage showing her fall. GMS had security cameras operating throughout the store — some of which were stationary while others moved to cover different angles and areas. App. at 123-24. When GMS submitted the footage from the surveillance cameras into evidence, while it showed Felix lying on the floor, it did not show the actual fall or the events leading up to

8

it. Felix asserts that the fact that the surveillance footage begins only after the fall implies spoliation or destruction of evidence by GMS.

The spoliation rule applies when the evidence in question is in the party's control and it "appear[s] that there has been an actual suppression or withholding of the evidence." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). "No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Id.* Applying this standard, the District Court concluded that there was no evidence of actual destruction of the evidence or other suppression. In doing so, it noted that Felix had not provided any evidence that the cameras had in fact captured the fall, nor had she contacted anyone in the ShopRite loss prevention department to ascertain if such footage even existed.

Felix reasserts this spoliation argument on appeal but has not provided any evidence that GMS destroyed evidence or otherwise engaged in efforts to suppress the evidence. Absent such evidence, we cannot apply a spoliation inference. *See id.* Consequently, we find no error in the District Court's failure to impose a sanction on the grounds of spoliation.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, we will affirm the District Court's order granting GMS's and Canada Dry's motions for summary judgment.