J-A25003-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| ALLYSON SMITH AND SCOTT SMITH, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| CHELSEA POCONO FINANCE, LLC, | : | |
| CHELSEA PROPERTY GROUP, INC., | : | |
| CHELSEA PROPERTY GROUP, CPG | : | |
| PARTNERS, LP, CPG HOLDINGS, LLC, | : | |
| SIMON PROPERTY GROUP, INC., | : | |
| SIMON PROPERTY GROUP, LP, | : | |
| | : | |
| Appellees | : | No. 358 EDA 2015 |

Appeal from the Order entered December 29, 2014,
Court of Common Pleas, Monroe County,
Civil Division at No. 6669 CV 2008

BEFORE:  DONOHUE, MUNDY and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.:　　　　　**FILED SEPTEMBER 30, 2015**

Appellants, Allyson W. Smith and Scott Smith (together, "the Smiths"), appeal from the December 29, 2014 order entered by the Monroe County Court of Common Pleas granting the motion for summary judgment filed by the appellees, Chelsea Pocono Finance, LLC, Chelsea Property Group, Inc., Chelsea Property Group, CPG Partnerships, LP, CPG Holdings, LLC, Simon Property Group, Inc., and Simon Property Group, LP (collectively, "Property Group").  Upon review, we affirm.

On July 21, 2006, the Smiths and their two minor children were shopping at The Crossings Premium Outlets ("The Crossings"), located in Monroe County, Pennsylvania.  While descending a stairwell with her five-

---

*Former Justice specially assigned to the Superior Court.

year-old son, Mrs. Smith slipped and fell. She did not know what caused her to fall, stating only that "it was like ice, and both of my feet just went right out from under me." Allyson Smith Deposition, 5/19/10, at 32. She did not see any debris near, around or under her.

Mr. Smith, who was walking ahead of Mrs. Smith, did not see her fall. Upon returning to his wife, he observed what he believed to be a food particle – either a french fry or a piece of a hamburger bun – that had been stepped on. He was unsure whether his wife actually fell on this substance, but it was his belief that this may have caused her to fall. Scott Smith Deposition, 5/19/10, at 13, 23.

After the fall, Mrs. Smith experienced "extreme pain" in her arm and hand and had Mr. Smith get their vehicle to take her to the hospital. Allyson Smith Deposition, 5/19/10, at 36-37, 40. The Smiths informed an unnamed employee of The Crossings that Mrs. Smith had fallen and asked for ice. The employee asked Mrs. Smith if she wanted an ambulance, but she declined. The employee radioed an unnamed security guard and requested ice, but that guard and another he consulted were both unable to access the first aid kit because they did not have keys to unlock the trailer in which it was located.

Mrs. Smith's arm was broken and required casting for six weeks. She subsequently required physical therapy for several weeks, following which

she needed no additional treatment. At the conclusion of her treatment, her arm and hand fully functioned without pain.

On July 17, 2008, the Smiths instituted the underlying action by filing a praecipe for writ of summons, naming Property Group as defendants. On October 27, 2008, the Smiths filed a complaint sounding in negligence and loss of consortium. Property Group filed preliminary objections to the complaint on November 20, 2008, and the Smiths filed an amended complaint on December 4, 2008.

Following the completion of depositions and discovery, Property Group filed a motion of summary judgment on April 15, 2014. The Smiths filed a response in opposition on May 14, 2014. On December 29, 2014, the trial court granted Property Group's motion.

This timely appeal followed, wherein the Smiths raise two issues for our review:

> 1. [Is Property Group] entitled to [s]ummary [j]udgment when [Property Group] had constructive notice of the dangerous condition at issue due to its "squished nature"[?]
>
> 2. [Is Property Group] entitled to [s]ummary [j]udgment when questions of material fact exist as to whether [Property Group] had a duty under Restatement (Second) of Torts, § 344, Comment (f)[,] to inspect the premises[?]

The Smiths' Brief at 4.

We review a decision granting summary judgment according to the following standard:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1261-62 (Pa. Super. 2013) (citation omitted).

In their first issue, the Smiths contend that summary judgment was granted in error "because the squished nature of the [f]rench fry/bun establishes that the debris had been on the floor for a long enough time[] to establish a genuine issue of material fact as to whether [Property Group was] on constructive notice of its existence." The Smiths' Brief at 10. The trial court disagreed, finding that the Smiths failed to present evidence as to

- 4 -

the length of time the foreign substance upon which Mrs. Smith allegedly slipped was present in the stairwell. Trial Court Opinion, 12/29/14, at 12 (pagination added).

Pennsylvania cases have adopted section 343 of the Restatement (Second) of Torts, which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS: DANGEROUS CONDITIONS KNOWN TO OR DISCOVERABLE BY POSSESSOR § 343 (1965); *see Schon v. Scranton-Springbrook Water Serv. Co.*, 112 A.2d 89, 91 (Pa. 1955).

> The principle of law from which this rule of the Restatement was derived is that a possessor of land is not an insurer of the safety of those on his premises. As such, the mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence. Therefore, in order to impose liability on a possessor of land, the invitee must present other evidence which tends to prove that the possessor deviated in some particular from

his duty of reasonable care under the existing circumstances. Logically, the invitees case-in-chief must consist of evidence which tends to prove either that the proprietor knew, or in the exercise of reasonable care ought to have known, of the existence of the harm-causing condition.

*Moultrey v. Great A & P Tea Co.*, 422 A.2d 593, 595-96 (Pa. Super. 1980) (internal citations omitted).

Where … the evidence indicates that the transitory condition is traceable to persons other than those for whom the owner is, strictly speaking, ordinarily accountable, the jury may not consider the owner's ultimate liability in the absence of other evidence which tends to prove that the owner had actual notice of the condition or that the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it.

*Id.* at 596 (internal citations omitted).  "What constitutes constructive notice must depend on the circumstances of each case, but one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident."  *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. 2001) (citation omitted).

There are numerous Pennsylvania cases addressing slip and falls caused by food items in places of business.  The holdings of these cases are clear:  the plaintiff has the burden of proving, by direct or circumstantial evidence, that the food item had been present long enough for the defendant to be charged with constructive notice.  *See, e.g., Martino v. Great Atl. & Pac. Tea Co.*, 213 A.2d 608, 610 (Pa. 1965) (affirming entry

of nonsuit in favor of defendant grocery store where the plaintiff failed to present evidence as to when the grape upon which she slipped appeared on the floor); *Myers v. Penn Traffic Co.*, 606 A.2d 926, 931 (Pa. Super. 1992) (en banc) (affirming grant of summary judgment in favor of defendant market as plaintiff failed to present "evidence as to the cause of the presence of the grape on the floor" that caused her to slip and fall); *Jones v. Sanitary Mkt. Co.*, 137 A.2d 859, 861 (Pa. Super. 1958) (en banc) (affirming directed verdict for the defendant market in negligence action for slip and fall on a piece of a banana peel because "[t]here is nothing whatsoever in her testimony when viewed in its most favorable light nor in the testimony of any other witness as to how long the offending substance had been in the aisle nor where it had come from"); *De Clerico v. Gimbel Bros.*, 50 A.2d 716, 717 (Pa. Super. 1947) (en banc) (affirming entry of nonsuit in favor of defendant where plaintiff stepped on a soft substance covered by a newspaper in a dimly lit stairwell that had been littered with torn, dirty newspaper for days, as the plaintiff failed to adduce any evidence as to when the soft substance appeared on the stairs); *Moultrey*, 422 A.2d at 535 (affirming entry of nonsuit in favor of defendant market where plaintiff failed to present any evidence as to the length of time the squashed cherry upon which she slipped was on the floor).

Simply because food debris upon which a plaintiff allegedly slips is squashed, torn or altered in some form does not necessarily give rise to a

finding that the substance was there for any length of time. **See, e.g.,** **Gorman v. Simon Brahm's Sons**, 148 A. 40, 40 (Pa. 1929) (per curiam) (crushed nature of spinach upon which plaintiff fell at the top of defendant's stairs did not permit a finding of constructive notice); **Jones**, 137 A.2d at 861; **Moultrey**, 422 A.2d at 535. Rather, the plaintiff must present sufficient evidence to establish that the food particle had been on the ground for such a length of time that the defendant knew or should have known of its existence.

Our review of the record in the case at bar, viewed in the light most favorable to the Smiths, reveals that the Smiths failed to present any evidence, either direct or circumstantial, to suggest that the foreign substance that allegedly caused Mrs. Smith to fall had been present on the stairwell for any length of time prior to Mrs. Smith falling. Mrs. Smith herself did not see the substance upon which she allegedly slipped and Mr. Smith never pointed out to her the substance upon which he believed she slipped. Allyson Smith Deposition, 5/19/10, at 32-33, 38. The only debris in the stairwell that Mrs. Smith observed was located in the corner of the stairwell, consisted of "napkins and various wrappers [and] receipts," and was located on stairs below the location where she fell. **Id.** at 35, 66.

Mr. Smith described the substance upon which he believed his wife slipped as "a [f]rench fry or a piece of hamburger bun or some type of food that was, you know, squished. You know, if you step on a [f]rench fry or

you step on a hamburger bun, a little piece, they're going to look very similar." Scott Smith Deposition, 5/19/10, at 12. He provided no additional description of the substance (e.g., that it was dirty, appeared to have been stepped upon multiple times, etc.). There were no pictures taken, no witnesses interviewed, and no other description of the substance provided. **See** Scott Smith Deposition, 5/19/10, at 22; Allyson Smith Deposition, 5/19/10, at 65. Mr. Smith further testified that the stairwell was crowded at the time his wife fell. Scott Smith Deposition, 5/19/10, at 22. Thus, without a more detailed description of the substance, the fact that it had been stepped on does not give rise to an inference that it had been there for an appreciable amount of time such that Property Group knew or should have known of its existence.

Despite the plethora of Pennsylvania cases addressing this issue, the Smiths rely upon two federal cases in support of their claim that summary judgment was improper. **See** The Smiths' Brief at 10 (citing **Rumsey v. Great Atl & Pac. Tea Co.**, 408 F.2d 89 (3d Cir. 1969); **Farina v. Miggy's Corp. Five & Six**, 2010 WL 3024757 (M.D.Pa. July 29, 2010). Although we may look to federal court decisions as persuasive authority, this Court is not bound to follow them. **Juszczyszyn v. Taiwo**, 113 A.3d 853, 859 n.7 (Pa. Super. 2015). Regardless of their lack of precedential value, neither **Rumsey** nor **Farina**, both of which involve slip and falls in a grocery store, entitles the Smiths to relief, as there, the plaintiffs presented circumstantial

evidence as to the length of time the substance upon which she fell had been on the floor. **See Rumsey**, 408 F.2d at 90-91 (plaintiff slipped on lettuce located on the floor that were described as "wilted … torn up … brown … yellow … old … [and] weren't fresh," which the court concluded was sufficient circumstantial evidence that the substance had been on the floor "for hours"); **Farina**, 2010 WL 3024757, at *9 ("The fact that there was no moisture on the floor besides where the piece of fruit was, and that the floor was described as 'sticky', 'gritty', and a 'grime' is enough to show that this substance may have been on the floor for an unreasonable length of time. There was also a skid mark on the floor from which a reasonable jury could conclude that it may have come from someone other than Ms. Farina.").

The record does not support the Smiths' claim that they presented sufficient evidence to create a genuine issue of whether the foreign substance upon which Mrs. Smith allegedly slipped was in the stairwell for such a length of time to provide Property Group with constructive notice of its presence. As such, we find no error in the trial court's grant of summary judgment on that basis.

In support of their second argument on appeal, the Smith's rely upon section 344 of the Restatement (Second) of Torts and comment f thereto, which state:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon

the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

RESTATEMENT (SECOND) OF TORTS: BUSINESS PREMISES OPEN TO PUBLIC: ACTS OF THIRD PERSONS OR ANIMALS, § 344 (1965); **see Glass v. Freeman**, 240 A.2d 825, 829 (Pa. 1968).

*Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

RESTATEMENT (SECOND) OF TORTS § 344 cmt. f (1965). Pursuant to section 344 and comment f, "[i]t is sufficient to establish a jury question of liability if the evidence … shows that the defendants had notice, either actual or

constructive, of prior acts committed by third persons within their premises which might cause injuries to patrons." **_Moran v. Valley Forge Drive-In Theater, Inc._**, 246 A.2d 875, 878-79 (Pa. 1968).

The Smiths assert that summary judgment was erroneous because there was "a genuine issue of material fact as to whether [Property Group] had actual knowledge of an issue with patrons dropping garbage on the steps where Mrs. Smith fell, and failed to take reasonable steps to prevent the dangerous condition from occurring." The Smiths' Brief at 17. They state that several of Property Group's witnesses testified that patrons regularly and routinely dropped food in areas near restaurants, including in the stairwell near the restaurants. **_Id._** at 22-23. Further, according to the Smiths, the mere presence of a garbage can and an eatery within ten feet of the stairwell results in a finding that Property Group "should have anticipated that debris would collect on the subject stairwell." **_Id._** at 23.

Our review of the record and the relevant law does not comport with the Smiths' claims. For example, contrary to the Smiths' contention, Douglas Smith, general manager at The Crossings, did not testify that "he was aware that people would leave food lying around the property, i.e.[,] dropping it on the ground." The Smith's Brief at 22 (citing Douglas Smith Deposition, 5/19/10, at 21-24). Nor did Travis Schuster, one of the maintenance supervisors of The Crossings in 2006, testify that food products accumulated in the stairwells or that he had seen food debris there in the

past. *Id.* at 22-23. Rather, the record reflects the following exchange between the Smiths' counsel and Mr. Schuster:

> Q. In your experience, did you typically see around the American Eatery spills and garbage accumulating?
>
> * * *
>
> A. ... To the best I remember, generally, the garbage would have been inside, as far as the food garbage goes, that would more or less inside [the restaurant's] space.
>
> * * *
>
> Q. What I'm asking is the area around the restaurant – if we want to draw a circle in this area coming in and out of the stores, stairwells, that whole area, did you find in your experience that you would have to focus on areas like that when it comes to cleaning?
>
> * * *
>
> A. Again, most of their general garbage was more or less inside their space as far as that particular area goes.
>
> Q. Okay. In your experience, in this stairwell right here did you, on any occasion, find spills, garbage, debris in that area?
>
> A. Other than napkins I think, no.

Travis Schuster Deposition, 11/14/12, at 33-35. Similarly, the other maintenance supervisor at The Crossings, William Barney, testified that he did not see food debris on the ground in the common areas at The Crossings. William Barney Deposition, 11/14/12, at 24-25.

Furthermore, we have found no case law, and the Smith's cite to none, indicating that a repeated dangerous condition is presumed on a business premises near eateries and/or garbage cans.  Case law addressing slip and falls involving food debris in grocery stores, even where food on the floor was known to be a recurring problem, suggests otherwise.  *See, e.g., Martino*, 213 A.2d at 610; *Myers*, 606 A.2d at 931.

In short, there was no evidence presented to suggest that the presence of food debris on the ground at The Crossing was a recurring problem that posed a hazard to its patrons, rendering comment f to section 344 of the Restatement (Second) of Torts inapplicable.  We recognize, as we have before, that establishing negligence "is often a heavy burden on a plaintiff even in a meritorious case, and under some circumstances the difficulties of proof of negligence may be insurmountable. … Nonetheless, … it is still incumbent upon the plaintiff to allege sufficient facts and present sufficient evidence to sustain a cause of action against the [defendants]." *Myers*, 606 A.2d at 932 (quoting (*De Clerico*, 50 A.2d at 717).  "A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor." *Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 568 (Pa. Super. 2014).

As the Smiths failed to present sufficient evidence on issues essential to their case on which they bore the burden of proof, Property Group was entitled to summary judgment as a matter of law. *See JP Morgan Chase*

*Bank, N.A.*, 63 A.3d at 1261-62. We therefore affirm the trial court's decision.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2015